No. 13-15154

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SALVADOR REZA,

        *Plaintiff-Appellant*,

v.

RUSSELL PEARCE, JEFF TRAPP, JOHN
BURTON,

        *Defendants-Appellees*.

Opinion Filed August 18, 2015

On Appeal from the United States District Court
For the District Court of Arizona

D.C. No. 2:11-cv-01170-FJM
Hon. Frederick J. Martone, Senior District Judge

---

## PETITION FOR PANEL REHEARING
## AND REHEARING EN BANC

---

Loren R. Ungar
Logan V. Elia
Evan D. Bolick
**ROSE LAW GROUP PC**
7144 E. Stetson Drive, Suite 300
Scottsdale, Arizona 85251
(480) 240-5650
lungar@roselawgroup.com

*Attorneys for Appellee Russell Pearce*

# TABLE OF CONTENTS

**Page**

RULE 35 STATEMENT ...........................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................3

LEGAL ARGUMENT ..............................................................................6

I.      The Majority's Decision Directly Conflicts with Supreme Court
        Precedent Regarding the Application of the Clearly Established Prong
        of Qualified Immunity Analysis …………………………............................ 6

II.     The Majority Contravenes Precedent Regarding Reasonable
        Restrictions on Speech in Limited Forums ………….….……………….. 11

III.    The Court Should Rehear the Case *En Banc* Because It Is One of
        Exceptional Importance …………………………….....................................13

IV.     Misapprehended Facts Merit Panel Rehearing and Review *En Banc* ………16

CONCLUSION ……………………………………………………………...18

PANEL DECISION-EXHIBIT A …………………………………………...20

# TABLE OF AUTHORITIES

**CASES**                                                        **Page(s)**

*Ashcroft v. al-Kidd,* 563 U.S. 731 (2011) ................................................1

*City of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015) .......................7

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985) ...........12

*Fogel v. Collins*, 531 F.3d 824 (9th Cir. 2008)..........................................8

*Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010) .............................. 14, 15

*Pearson v. Callahan*, 555 U.S. 223 (2009)........................................ 10, 14

*Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014) ........................................6, 9

*Preminger v. Peake*, 552 F.3d 757 (9th Cir. 2008)................................2, 11

*Romero v. Kitsap County*, 931 F.2d 624 (9th Cir. 1991) ........................................10

*Swarner v. United States*, 937 F.2d 1478 (9th Cir. 1991) ......................................12

*White v. City of Norwalk*, 900 F.2d 1421 (9th Cir. 1990)........................................14

**STATUTES**

Civil Rights Act of 1871, 42 U.S.C. § 1983 ............................................. 1, 4, 6, 12

## RULE 35 STATEMENT

A divided panel of this Court has issued a decision holding former Arizona State Senate President Russell Pearce was not entitled to qualified immunity from a 42 U.S.C. § 1983 claim even though not a single decision clearly established the right Plaintiff asserts, as required under existing Supreme Court precedent.[1] Specifically, the majority ignores the Supreme Court's instruction that a right may only be considered clearly established when *existing* precedent has "placed the statutory or constitutional question beyond debate" by a plaintiff. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011). As the dissent explicates and the majority acknowledges, no precedent exists to satisfy the clearly-established prong of qualified immunity. (Slip Op. 23-26 (Wallace J., dissenting)). Consideration by the full Court is therefore necessary to secure and maintain uniformity with the Supreme Court.

Additionally, the majority adopts an entirely new analysis for determining the reasonableness of restrictions in limited public forums. The Court has long held that a restriction on expressive conduct in a limited public forum "must be reasonable in the light of the purpose of the forum *and all the surrounding circumstances* . . . . But the restriction need not constitute the least restrictive alternative available."

---

[1] Pursuant to Ninth Circuit Rule 40-1(c), a copy of majority panel's decision, *Reza v. Pearce*, No. 13-15154 (9th Cir. Aug. 18, 2015) is attached as **Exhibit A** (cited as "Slip Op. __").

1

*Preminger v. Peake*, 552 F.3d 757, 765-66 (9th Cir. 2008) (internal quotations and citations omitted) (emphasis added). Although the majority appears to recognize these principles, it departs from existing case law by: (1) ignoring the unique circumstances surrounding Senator Pearce's actions; and (2) finding his actions were unreasonable because "Senator Pearce had several less restrictive alternatives open to him." (Slip Op. 20). In so doing, the majority functionally adopted a least-restrictive-means approach and discounted the surrounding circumstances when considering the reasonableness of Senator Pearce's actions. If this Court wishes to depart from its prior First Amendment analysis concerning reasonableness and establish a new standard, it should do so only after *en banc* review.

Concurrently, this case is of exceptional importance. The majority's published decision sets new precedent in qualified-immunity analysis establishing a new standard to guide public officials in restricting speech. The majority places substantial new limitations on the power of government officials to maintain control of government buildings in the face of disruptive behavior. It also creates a new definition of what constitutes an "actual disruption" for a government official to act upon. Accordingly, because of the circuit-wide importance of these issues to public officials, their implications to qualified immunity, and the opinion's conflict with existing precedent, *en banc* review is necessitated and warranted.

2

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On February 22, 2011, Plaintiff/Appellant Mr. Salvador Reza was present in an overflow room at the Arizona State Senate watching a live, closed-circuit television broadcast of senate proceedings.[2] (EOR 122, 134). The proceedings were occurring simultaneously in an adjoining room. (EOR 134, ¶ 8). Numerous other citizens were present in the overflow room to watch the proceedings. (*Id.* at ¶ 10). Sergeant-at-Arms Joe Kubacki advised the protesters to observe the Arizona Senate's Rules of Order and Decorum - which were not followed. (EOR 143, ¶ 1; 144 ¶ 2-4; 147, ¶ 2). In reaction to Kubacki, the crowd became more disruptive, further hindering the Senate from conducting the hearing. (EOR 135, ¶ 15). Adding to the disruption, Mr. Reza stood up in response to Kubacki, and began to clap in a slow, rhythmic fashion. (*Id.;* Slip Op. 6). Other members of the crowd clapped loudly along with him. (*Id.* at ¶ 16).

Senator Pearce observed that the disruptions in the overflow room were making it difficult for the Senate to conduct its business. (EOR 123, ¶ 17). At about the same time, Kubacki reported the disturbances to Senator Pearce. (*Id.* at 123, ¶ 18; 135, ¶ 17). Senator Pearce instructed Kubacki to maintain order, including ejecting any disruptors. (EOR 123, ¶ 19; 135, ¶ 18). Kubacki responded that it

---

[2] The majority misstates that the proceedings involved S.B. 1070, a state immigration law that was enacted the year before.

3

might be more efficient and advisable to keep the disturbances down to a minimum and finish the hearing, given the time of night, the agitation of the protesters, and the fact that the hearing was almost over. (EOR 123, ¶ 20; 135, ¶ 19). Kubacki did not want the situation to escalate, or worse, become violent. (*Id.* at 123, ¶ 21; 135, ¶ 20). After the hearing ended, Senator Pearce approached Arizona Department of Public Safety Officer Jeff Trapp and Kubacki to request that the offenders from the overflow area be identified because of their disorderly and disruptive behavior. (EOR 124, ¶ 25; 144, ¶ 6; 147 ¶¶ 5-6). Trapp and Kubacki identified Mr. Reza and another man as the primary individuals who had been disruptive. (EOR 147). Due to their disruptive behavior, Senator Pearce ordered that Mr. Reza and the other individual be restricted from entering the Senate Building for two weeks; during that time Mr. Reza was not restricted from meeting with Senators outside the Senate or from pursuing alternative means of communication with Senate members. (EOR 104-105; 125, ¶ 34; 282). On February 24, 2011, Mr. Reza was arrested for trespass when he attempted to gain access to the Senate Building to speak with a Senator and refused to leave after being told that he was not allowed in the Building. (EOR 144).

Mr. Reza filed his § 1983 Complaint asserting Senator Pearce violated his constitutional rights. The district court granted Senator Pearce's Motion for Summary Judgment based on qualified immunity. (EOR 4-11). Mr. Reza appealed. (EOR at 1).

A divided panel reversed. The majority holds a triable issue of fact exists as to whether Senator Pearce violated Mr. Reza's First Amendment rights. (Slip Op. 15). It acknowledges that Senator Pearce was authorized to take actions to maintain decorum and order within the Senate building and, as the Senate building is a limited public forum, Senator Pearce was permitted to take actions to restrict Mr. Reza's speech in a reasonable and viewpoint-neutral manner. (Slip Op. 11-12). It also recognizes Senator Pearce acted in a viewpoint-neutral manner, but it found issues as to the "reasonableness" of Senator Pearce's actions. (*Id.* at 12-15). It holds that the facts are unclear as to whether Mr. Reza had actually disrupted the Senate proceeding and whether Senator Pearce was justified in restricting Mr. Reza; it also holds that Senator Pearce had not adopted the least-restrictive means of redress available to him. (*Id.* at 18-21).

In dissent, Judge Wallace points out that the majority departs from existing Supreme Court precedent regarding the framework of qualified immunity. He emphasizes that Senator Pearce was reasonably entitled to rely on his Senate police officers' reports that individuals had actually disrupted the Senate proceeding and was also entitled to rely on the officers' identification of Mr. Reza as one of the individuals who disrupted the Senate proceeding. (Slip Op. 25-26 (Wallace J., dissenting)). Judge Wallace also underscores that the majority's discussion as to the reasonableness of Senator Pearce's actions departed from controlling circuit

5

precedent by ignoring "all of the surrounding circumstances" facing Senator Pearce when he imposed the restriction on Mr. Reza. (*Id*. at 25). Judge Wallace determines that because officers had identified Mr. Reza as an individual who actually disrupted the Senate proceeding and because legitimate safety concerns existed at the time, Senator Pearce acted reasonably in restricting Mr. Reza. (*Id*.).

Judge Wallace further concludes that the majority made a more fundamental error. He stresses the majority erred because "at the time, not a single Supreme Court decision clearly established the right [Mr.] Reza now asserts," and even though the majority concedes this point, it nevertheless determined the right was clearly established because there have been no cases before the Court "affirmatively permitt[ing]" the restriction. (*Id*. at 25-26). Judge Wallace asserts that the majority used the *absence* of precedent, rather than *existing* precedent, to determine that the restriction was clearly established, in direct contradiction to Supreme Court precedent. (*Id*. at 26).

## **LEGAL ARGUMENT**

**I.     The Majority's Decision Directly Conflicts with Supreme Court Precedent Regarding the Application of the Clearly Established Prong of Qualified Immunity Analysis.**

To recover under 42 U.S.C. § 1983, Mr. Reza must show Senator Pearce "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)

(internal quotation marks omitted). The Supreme Court has repeatedly held the clearly established standard is not easily overcome. *City of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015). It has frequently cautioned courts not to define clearly established law at a high level of generality. *Id.*; *accord al-Kidd,* 131 S. Ct. at 2083. The Court's exacting standard is required to "give government officials breathing room to make reasonable but mistaken judgments" by "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Al-Kidd*, 131 S. Ct. at 2085 (internal quotation omitted). Under Supreme Court precedent, Senator Pearce "'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' meaning that 'existing precedent … placed the statutory or constitutional question beyond debate.'" *Sheehan*, 135 S. Ct. at 1774 (quoting *al-Kidd,* 131 S. Ct. at 2083).

The majority concedes that "Senator Pearce rightly contends that, at the time of his actions, neither the Supreme Court, nor our court, had squarely addressed the specific types of restrictions allowed in a limited public fora, in light of public safety concerns." (Slip Op. at 19). Nonetheless, it concluded that Senator Pearce's action violated Mr. Reza's clearly established rights. (*Id.* at 20). This conclusion necessitates a finding that every reasonable official in Senator Pearce's shoes would have understood that Senator Pearce was acting improperly.

7

Rather than follow the Supreme Court's explicit instruction that a right's contours are not sufficiently definite absent existing and specific precedent, the majority impermissibly applied the exact opposite rule. Instead of properly addressing whether any *existing* case expressly *prohibited* an official from banning an individual from a government building for disruption, the majority determined the restriction was clearly established because no case *affirmatively permitted* the restriction. (Slip Op. 17). As the dissent correctly emphasizes, the majority's use of the *absence* of precedent rather than *existing* precedent to determine that the restriction was clearly established directly conflicts with Supreme Court precedent. (Slip Op. 26 (Wallace J., dissenting)).

The majority flips qualified immunity analysis on its head and asserts a new standard to determine whether a right is clearly established. Indeed, this Court has long held that before "a clearly-established right exists … there must be some parallel or comparable factual pattern to alert an officer that a series of actions would violate an existing constitutional right." *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008). But, no case addressed banning an individual from a limited public forum for causing an actual disruption. Without such case law, the question at bar cannot be "beyond debate."

The majority's holding is in stark contrast to several recent Supreme Court cases. For example, in *Sheehan*, 135 S. Ct. 1765, the Court analyzed whether police

8

officers violated Sheehan's Fourth Amendment rights when they were faced with exigent circumstances and entered her closed room without accommodating her disability. The Court addressed the issue by asking whether the officers violated *existing* clearly established law. *Id.* at 1774. It reversed this Court's denial of qualified immunity and concluded:

> *No precedent clearly established that there was not "an objective need for immediate entry" here.* No matter how carefully a reasonable officer read [the cases] *Graham, Deorle,* and *Alexander* beforehand, that officer could not know that reopening Sheehan's door to prevent her from escaping or gathering more weapons would violate the Ninth Circuit's test, even if all the disputed facts are viewed in respondent's favor. Without that "fair notice," an officer is entitled to qualified immunity.

*Id*. at 1777 (emphasis in the original) (internal citations omitted); *accord Lopez v. Smith,* 135 S. Ct. 1, 6 (2014); *Plumhoff,* 134 S. Ct. at 2023; *al-Kidd*, 131 S. Ct. at 2083.

The majority has erroneously framed existing precedent at a high level of generality. *See, e.g., Sheehan*, 135 S. Ct. at 1776 ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."). In addition to the fact that no case addressed the issue of banning someone for a disruption – especially a disruption in an overflow room, as reported to Senator Pearce by his Sergeant-at-Arms – not even the majority opinion here announced such a rule. Instead, the majority merely

9

announced that "imposing a complete bar on [Mr.] Reza's entry into the Building, exceeds the bounds of reasonableness as a response to a single act of disruption," for specific factual reasons. (Slip Op. 14-15). None of these specific factual concerns about the nature of Senator Pearce's particular conduct has ever been considered. No matter how closely Senator Pearce reviewed the relevant precedent, he could not have known that a ban would violate Mr. Reza's rights under the circumstances.

Notwithstanding, the majority now takes qualified immunity analysis in an entirely different direction by finding rights are clearly established by the *absence of precedent*. (Slip Op. 17 ("No cases, in the Ninth Circuit or otherwise, empowered a government official to completely ban an individual from a government building based on a single disruption of a hearing.")). Not only does the majority run counter to existing methodology, it now also shifts the burden on an official to *disprove* the existence of a federal right instead of requiring a plaintiff to prove the existence of a clearly established right. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991) ("The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.") (Internal citations omitted). In effect, the majority has eviscerated the protections of qualified immunity.

"Because qualified immunity is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to

10

trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). The dire consequences of the majority's decision for qualified immunity merits review *en banc*.

## II. The Majority Contravenes Precedent Regarding Reasonable Restrictions on Speech in Limited Forums.

As the dissent noted, the majority's discussion of reasonableness fails to properly consider the unique circumstances facing Senator Pearce when he imposed the restriction on Mr. Reza. (Slip Op. 25 (Wallace J., dissenting)). This omission ignores this Court's precedent that the reasonableness of a restriction on speech in a limited public forum *must be viewed* "in light of the purpose of the forum and all the surrounding circumstances." *Preminger*, 552 F.3d at 765 (internal citation omitted).

Properly considered, the surrounding circumstances demonstrate that Senator Pearce acted reasonably to promote order, safety and security in the Senate Building. At the time of the hearing, Jared Loughner's shooting of United States Representative Gabrielle Giffords and killing of several others in Tucson, Arizona was fresh in the minds of the Arizona Senate and Senator Pearce. (EOR 122-123). This event was coupled with other circumstances: (1) the tense atmosphere at the Senate Building on February 22, 2011; (2) the arrest of protesters earlier in the day; (3) Arizona State Senators' expressions of fear for their safety; (4) the numerous disruptions at the public hearing; (5) Senator Pearce himself observing the crowd becoming disruptive, making it difficult for the Senate to conduct its business; and

11

(6) Kubacki advising Senator Pearce to allow the protestors to remain in the overflow room lest the situation escalate or get violent. (EOR 122-123, 134-135). These circumstances provided Senator Pearce with an objectively reasonable basis to conclude that heightened attention to safety and decorum in the Senate Building was appropriate.

Similarly, in judging reasonableness the majority contravened this Court's and Supreme Court precedent by ignoring the alternatives open to Mr. Reza during the restriction period. Well-settled case law, which the majority even cited, cements that the reasonableness of Senator Pearce's actions are not based on a least-restrictive-means test. "The Government's decision to restrict access to a nonpublic forum need only be reasonable; it need not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Def. & Educ. Fund Inc.*, 473 U.S. 788, 808 (1985); *see Swarner v. United States*, 937 F.2d 1478, 1482 (9th Cir. 1991) ("The existence of alternative communication channels … [is] relevant to a restriction's reasonableness."). The majority, however, concluded Senator Pearce's actions were not reasonable because "Senator Pearce had several less restrictive alternatives open to him." (Slip Op. 20).

In so doing, the majority functionally adopted a least-restrictive-means approach. It also ignored the reasonable alternative communication channels Mr. Reza had available to him. It is undisputed that Mr. Reza never sought to attend any

12

hearing at the Senate during the restriction and based his §1983 complaint on his inability to speak with his elected representatives. (Complaint, Dist.Ct.Dkt. 1). The majority overlooks the fact that Mr. Reza had a multitude of alternative means of speaking with his elected representatives under the restriction, including communication by telephone, mail, email, and face-to-face meetings outside the Senate Building. (EOR 104-05). In fact, Mr. Reza *admits* that on the day in question, February 24, 2011, he spoke with Senator Gallardo prior to arriving at the Senate Building and also admits that Trapp informed him prior to his arrest that he could speak with the Senator outside the Building. (EOR 67, ¶¶ 32).

## III. The Court Should Rehear the Case *En Banc* Because It Is One of Exceptional Importance.

The majority's opinion incorrectly sets new precedent and substantially erodes the underpinnings of qualified immunity. The majority sets a new standard for judging whether public officials are entitled to qualified immunity. As the dissent highlights, instead of determining whether any existing case expressly *prohibited* the restrictions to put public officials on notice they were violating a right, the majority demanded that there be a case specifically approving of the official's actions. *Compare Sheehan*, 135 S. Ct. at 1776.

Further, in claiming that "any purported protest never actually disrupted Senate proceedings" because "Senate proceedings continued for the duration of the ... protest," the majority erroneously announced an entirely new rule of law. (Slip

13

Op. 14). This new rule of law has circuit-wide importance to public officials and their – now restricted – ability to maintain decorum and safety in limited public forums, which warrants *en banc* review.

Prior to this decision, an actual disruption included *any* actual, non-illusory disruption, disturbance, or impediment to the orderly conduct of affairs held in a limited public forum. *See, e.g.*, *White v. City of Norwalk*, 900 F.2d 1421, 1424-26 (9th Cir. 1990). Case law is clear that even if no actual disruption occurred, officials were entitled to qualified immunity if their actions were reasonably premised on a mistake of fact. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (internal quotation marks omitted)). Yet the majority, in seeming reliance on *Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010), concluded that an "individual must actually disrupt the proceedings in the limited public forum" and that there can be no finding of actual disruption if the proceedings concluded even in light of the disruption. (Slip Op. 18-19).

This ruling eliminates Senator Pearce's (and all other officials') ability to reasonably rely on the reports of their security officers or other authorized representatives when taking action against a disruptive individual. The majority now

requires personal, direct and unequivocal evidence of an actual disruption so serious that the proceedings *must not have been able to conclude*.

Most importantly, *no court has ever held* that actual disruption requires an actual halt to the proceedings. Indeed, this rule has never been clearly established. Existing precedent never gave Senator Pearce notice. No court even considered it a dispositive factor. Senator Pearce observed that the disruptions from the crowd in the overflow room were "making it difficult for the Senate to conduct its business." (EOR 123). He could not anticipate – because it was not clearly established – that his legitimate power to ban Reza for disorderly conduct in the overflow room would turn on whether it had become *impossible* for the Senate to conduct its business.

While *Norse* does recognize that there must be actual disruption by an individual, it does not hold that the disruption must halt the proceedings. All it holds is that "[a]ctual disruption means actual disruption. It does not mean constructive disruption, technical disruption, virtual disruption, *nunc pro tunc* disruption, or imaginary disruption." *Norse*, 629 F.3d at 976. It cannot logically follow that a public official cannot maintain the rules of decorum in a government building or that senators must endure shouting matches with objectors. *Norse* does not limit *Norwalk's* recognition that actionable disruption exists when a disturbance interferes with Senate business or with other speakers – like the citizens present with Mr. Reza in the overflow room. *Norwalk*, 900 F.2d at 426.

15

The new standards imposed by the majority must be reviewed *en banc*, given their departure from precedent and the severe limitations they impose on governmental actors in controlling the decorum and safety of limited public forums. Further, *en banc* review is necessary to assess their applicability to qualified immunity and whether they were clearly established at the time Senator Pearce imposed the restriction on Mr. Reza.

## IV. Misapprehended Facts Merit Panel Rehearing and Review *En Banc*.

The majority inaccurately states that "[a]t least one officer had advised the senator that there was no reason to remove any audience members from the overflow room or the Building." (Slip Op. 6, 14, 18). In fact, no one ever advised that there was *no reason* to remove audience members. The majority misconstrues Kubacki's statements. Actually, "Kubacki reported incidents of disorderly conduct to [Senator] Pearce" and "advised [him] that the best way to *keep disturbances to a minimum* was to allow the protestors to remain in the overflow rooms until the hearing ended" because "Kubacki did not want the situation to escalate *[o]r worse, get violent*." (EOR 135, ¶¶ 14-21) (emphases added). Kubacki thus acknowledged that while Mr. Reza was causing disturbances, ejecting him might actually make the situation worse. Kubacki's statements were corroborated by the other Senate police officer working that night and were consistent with Senator Pearce's personal observation of the disturbances being caused by the individuals in the overflow room. (EOR

123, ¶ 16-17; 144, ¶ 2-6). Mr. Reza does not contest Kubacki's testimony, and there are no issues of fact concerning this conversation with Senator Pearce. Having been apprised of the situation and Kubacki's concerns, Senator Pearce would have actually risked escalating the situation and causing greater disturbances had he ignored the advice of his sergeant-at-arms and immediately removed Mr. Reza or other individuals from the hearing room. Senator Pearce and Kubacki recognized that immediate ejection was an untenable and unreasonable solution, given the circumstances surrounding the proceeding. Based on the circumstances, Senator Pearce acted reasonably to protect the decorum and security of the Senate building by ensuring that the leaders provoking these disruptions would be prohibited from engaging in such behavior in the near future.

Even if Senator Pearce's beliefs were mistaken, he is still entitled to qualified immunity because he reasonably believed Mr. Reza was actually disruptive during the public hearing based on Senate officers' identification. Therefore, Senator Pearce did not violate a clearly established constitutional right, even if it was established, of which a reasonable person would have known. *See al-Kidd*, 131 S. Ct. at 2084-85; slip Op. 27 (Wallace J., dissenting).

## CONCLUSION

For the foregoing reasons, Senator Pearce respectfully requests the Court grant panel rehearing and/or rehearing *en banc*.

Respectfully submitted this 15th day of September, 2015.

**ROSE LAW GROUP PC**

*/s/ Loren R. Ungar*
Loren R. Ungar
Logan V. Elia
Evan D. Bolick
7144 East Stetson Drive, Suite 300
Scottsdale, Arizona 85251
Phone: (480) 240-5650

*Attorneys for Appellee Russell Pearce*

18

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO CIRCUIT RULES 35-4 AND 40-1**
**FOR 10-56971**

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached Petition for Rehearing or Rehearing En Banc is: (check (x) applicable option)

X____ Proportionately spaced, has a typeface of 14 points or more and contains 4,051 words (petitions and answers must not exceed 4,200 words).

Or

_____ In compliance with Fed.R.App.P. 32(c) and does not exceed 15 pages.


September 15, 2015                    /s/ *Loren R. Ungar*
Dated

19