United States Court of Appeals for the Ninth Circuit No. 13-15154

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

_____

SALVADOR REZA,

Plaintiff-Appellant,

v.

RUSSELL PEARCE; JEFF TRAPP; AND JOHN BURTON,

Defendants-Appellees.

**APPELLANT'S RESPONSE TO APPELLEE RUSSELL PEARCE'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

Stephen Montoya
**MONTOYA, JIMENEZ & PASTOR, P.A.**
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Attorney for Appellant

October 21, 2015

**Table of Contents**

Page

RULE 35 STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ............................................................................ 2

ARGUMENT ..................................................................................................... 4

 A. The legal standard applied in this Court's panel <u>Opinion</u> has been clearly established for at least twenty-five years ................................ 4

 B. There is no evidence that Mr. Reza actually disrupted the Senate at any time in any way ........................................................................... 7

CONCLUSION ................................................................................................ 14

CERTIFICATE OF COMPLIANCE ................................................................ 15

CERTIFICATE OF SERVICE ......................................................................... 16

i

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                    **PAGE**

Acosta v. City of Costa Mesa,
    718 F.3d 800 (9th Cir. 2013)…..……………..……………………….2, 6, 7, 14

Ashcroft v. al-Kidd,
    131 S.Ct. 2074 (2011)..………....…..……….……………………… 5

Guerra v. Sutton,
    783 F.2d 1371 (9th Cir. 1986)……………………………………………….11

Lacey v. Maricopa County and Arpaio,
    693 F.3d 896 (9th Cir. 2012) ……………..………………………….....0, 12

Kindt v. Santa Monica Rent Control Board,
    67 F.3d 266 (9th Cir. 1995)…..………..…………………….. 2, 5, 7, 14

Mendocino Environmental Center v. Mendocino County,
    192 F.3d 1283 (9th Cir. 1999) ......................................................................11

Norse v. City of Santa Cruz,
    629 F.3d 966 (9th Cir. 2010) .............................................2, 4, 5, 6, 7, 13, 14

Tinker v. Des Moines School District,
    393 U.S. 503 (1969)..........................................................................................6

United States v. Bernard,
    623 F.2d 551 (9th Cir. 1980) .......................................................................11

United States v. Kyllo,
    37 F.3d 526 (9th Cir. 1994) .......................................................................11

United States v. Lopez,
    482 F.3d 1067 (9th Cir. 2007) .....................................................................10

White v. City of Norwalk,
    900 F.2d 1421 (9th Cir.1990)...............................................1, 2, 3, 4, 5, 6, 7, 14

**Rule 35 Statement**

In its Opinion of August 18, 2015, this Court applied its longstanding rule that a member of the public cannot be lawfully ejected from a public hearing absent evidence that the person ejected "actually disrupted" the hearing. Because there was a factual dispute regarding whether or not Mr. Reza actually disrupted the Arizona State Senate, the Court correctly concluded that Mr. Pearce was not entitled to qualified immunity from liability arising from his order banning Mr. Reza from entering the Senate building.

Notwithstanding Mr. Pearce's assertions to the contrary, the Court's Opinion did not "set a new standard," but in fact applied a rule of law that was clearly established twenty-five years ago by this Court's opinion in White v. City of Norwalk, 900 F.2d 1421 (9th Cir. 1990). In White, the Court considered a First Amendment challenge to a municipality's "rules of decorum" and concluded that because the rules subjected speakers to "restriction only when their speech disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting," the rules did not violate the First Amendment. Id. at p. 1426 (emphasis added). The Court's decision in White put Mr. Pearce on clear notice that he could only lawfully remove a member of the public from a public meeting if the person actually disrupted, disturbed, or impeded the meeting. Mr. Pearce's Petition for Rehearing asks this Court to repudiate this longstanding rule.

1

In addition to asking the Court to repudiate its opinion in White, Mr. Pearce invites the Court to either ignore or reject White's extensive progeny, namely, Acosta v. City of Costa Mesa, 718 F.3d 800, 811 (9th Cir. 2013), Norse v. City of Santa Cruz, 629 F.3d 966, 976 (9th Cir. 2010) (en banc), and Kindt v. Santa Monica Rent Control Board, 67 F.3d 266, 270 (9th Cir. 1995). Nevertheless, based on these longstanding authorities, Mr. Pearce's claim that this Court's Opinion sets a "new precedent" in conflict with the Court's previous decisions is both false and misleading. This Court should accordingly reject Mr. Pearce's invitation to de facto reverse the Court's clearly established precedents and deny his Petition for Rehearing and Rehearing En Banc.

## Factual Background

On February 24, 2011, at approximately 3:00 in the afternoon, Salvador Reza, an immigration rights activist and vocal critic of Arizona State Senate President Russell Pearce, entered the Arizona State Senate building in Phoenix, Arizona to confer with his elected representative, State Senator Steven Gallardo. See Excerpts of Record ("EOR") II, pp. 65-69, ¶¶ 6, 28-48. Senator Gallardo had invited Mr. Reza to meet with him at the Senate building to help Mr. Reza obtain a permit required to conduct a protest outside of the Senate building against Senator

2

Pearce's most recent legislative efforts to empower the state of Arizona to penalize illegal immigration. Id. at ¶¶ 28-51.[1]

However, before Mr. Reza could actually meet with Senator Gallardo, two Arizona Department of Public Safety Officers, John Burton and Jeff Trapp, confronted him and told him that he was banned from the State Senate building by order of Senate President Russell Pearce. Id. at ¶¶ 34-36. When Mr. Reza asked Officers Burton and Trapp to explain why he was being forbidden from peacefully entering a public building to meet with his elected representative—an act clearly foundational to the First Amendment, see, e.g., White v. City of Norwalk, 900 F.2d 1421, 1424-1426 (9th Cir. 1990) ("citizens have an enormous First Amendment interest in directing speech about public issues to those who govern")—the police officers refused to explain and proceeded to arrest him for "trespass" before he even had the chance to voluntary leave the building. Id. at ¶¶ 34-51.

Mr. Reza subsequently learned that Russell Pearce had banned him from the Senate building because he had allegedly disrupted a Senate hearing on February 22, 2011 regarding the immigration legislation that Pearce had sponsored. Id. at ¶¶ 34-37. However, there is absolutely no evidence that Mr. Reza actually disrupted the Senate hearing of February 22 or at any other time. Id. at pp. 53-54, ¶¶ 66-74;

---

[1] For a summary of Mr. Pearce's proposed legislation regarding immigration law, known as the "Omnibus Immigration Bill," see, Arizona Republic, Arizona Immigration Bills Aim for Bigger Crackdown, February 23, 2011.

pp. 60-61, ¶¶ 101-111.  Absent evidence of "actual disruption" caused by Mr. Reza, there was no legal basis for Russell Pearce to ban Mr. Reza from the Senate building or for Officers Burton and Trapp to subsequently arrest him for trespass in the Senate building on February 24, 2011.  See, e.g., Norse v. City of Santa Cruz, 629 F.3d 966, 976 (9th Cir. 2010) (en banc) (a city's "rules of decorum" satisfy First Amendment requirements "only [when they] permit a presiding officer to eject an attendee for actually disturbing or impeding a meeting").

Based on its decisions in White and Norse, the Court correctly concluded that Russell Pearce was not entitled to summary judgment on his qualified immunity defense to Mr. Reza's claims.

## Argument

### A. The legal standard applied in this Court's Opinion has been clearly established for at least twenty-five years.

This Court's Opinion did not announce a new legal standard.  To the contrary, it merely applied a legal rule that the Court recognized twenty-five years ago and has consistently applied in case after case ever since.  Specifically, in its 1990 opinion in White v. City of Norwalk, 900 F.2d 1421, 1426 (9th Cir. 990), the Court ruled that consistent with First Amendment requirements, "speakers are subject to restriction only when their speech disrupts, disturbs or otherwise impedes the orderly conduct of the [public] meeting." (Emphasis added.)

4

This Court has consistently applied the "actual disruption" rule announced in White ever since the opinion was issued in 1990. For example, in its 1995 opinion in <u>Kindt v. Santa Monica Rent Control Board</u>, 67 F.3d 266, 270 (9th Cir. 1995), the Court considered a First Amendment challenge arising from an individual's multiple ejections from a rent control board's meetings and concluded that because the individual ejected had actually disrupted the meetings by repeatedly speaking out of order and yelling at the board, the ejections did <u>not</u> violate the First Amendment.

Similarly, in <u>Norse v. City of Santa Cruz</u>, 629 F.3d 966, 976 (9th Cir. 2010), the Court (sitting <u>en banc</u>) unanimously ruled that a legislative body's enforcement of its "rules of decorum" satisfy First Amendment requirements "<u>only</u> [when they] permit a presiding officer to eject an attendee for <u>actually</u> disturbing or impeding a meeting." (Emphasis added.) To preclude any doubt regarding the broad scope of the rule, the Court in <u>Norse</u> was careful to explain that:

> Actual disruption means actual disruption. It does <u>not</u> mean constructive disruption, technical disruption, virtual disruption, <u>nunc pro tunc</u> disruption, or imaginary disruption.

<u>Id</u>. at p. 976 (emphasis added). In light of the specificity of this language, Mr. Pearce's contention the rule is "too general" to defeat qualified immunity is specious. As the Supreme Court of the United States concluded in <u>Ashcroft v. al-Kidd</u>, 131 S.Ct. 2074, 2083 (2011), a rule does "<u>not</u> require a case directly on

5

point" to be "clearly established." (Emphasis added.) Indeed, the actual disruption rule as explained by <u>Norse</u> could <u>not</u> be more specific. It is difficult to imagine just what part of "actual disruption" Russell Pearce cannot understand.

To underscore the "actual" component of the rule, Judge Kozinski emphasized in his concurring opinion in <u>Norse</u> that, "in our system [of government], undifferentiated fear or apprehension of disturbance is <u>not</u> enough to overcome the right to freedom of expression." <u>Id</u>. at p. 979 (emphasis added), quoting <u>Tinker v. Des Moines School District</u>, 393 U.S. 503, 508 (1969). Accordingly, any reasonable doubt regarding the content of the actual disruption rule announced by the Court's 1995 opinion in <u>White</u> was resolved by the Court's subsequent 2010 <u>en banc</u> opinion in <u>Norse</u>.

More recently, in its 2013 opinion in <u>Acosta v. City of Costa Mesa</u>, 718 F.3d 800, 811 (9th Cir. 2013), the Court reiterated its actual disruption rule and concluded that:

> An ordinance that governs the decorum of a city council meeting is not facially overbroad if it only permits a presiding officer to eject an attendee for actually disturbing or impeding a meeting. However, actually disturbing or impeding a meeting means "actual disruption" of the meeting; a municipality cannot merely define disturbance in any way it chooses, <u>e.g</u>., it may not deem any violation of its rules of decorum to be a disturbance.

6

Quoting <u>Norse v. City of Santa Cruz</u>, 629 F.3d at 976 (9th Cir. 2010) (emphasis in original, brackets and some quotation marks omitted).

Accordingly, Mr. Pearce's contention that this Court's <u>Opinion</u> "sets a new standard" is belied by this Court's opinions in <u>White</u>, <u>Kindt</u>, <u>Norse</u>, and <u>Acosta</u>. In fact, the legal rule applied in the Court's <u>Opinion</u> was clearly established by this Court's opinion in <u>White</u> twenty-five years ago and has been uniformly applied by the Court ever since.

> **B. There is no evidence that Mr. Reza actually disrupted the Senate at any time in any way.**

In this case, the record is undisputed that Mr. Reza <u>never</u> actually disrupted <u>any</u> proceeding at the Arizona State Senate in any way at any time. Specifically, one of the two police officers who ultimately arrested Mr. Reza for attempting to enter the Senate, Officer John Burton, testified that he <u>never</u> witnessed Mr. Reza engage in <u>any</u> disruptive conduct at the public hearing at the Senate on February 22, 2011. EOR II, pp. 53-54, ¶¶ 66-74.

Nor did Officer Burton witness Mr. Reza do anything that would have justified his removal from the Senate building on February 22, 2011. <u>Id</u>. at ¶ 71. Nor did Officer Burton have to instruct Mr. Reza to be quiet or otherwise modify his behavior during the hearing on February 22, 2011:

> Q. Did you have to instruct [Mr. Reza] to be quiet that night?

7

      A.    No, not that I recall.

Id. at ¶ 72. Nor did any state official inform Officer Burton that Mr. Reza was disruptive at the hearing on February 22, 2011:

      Q.    Did Sergeant Trapp come to you that night and say: Hey, this Sal Reza guy, he's being disruptive. Watch him?

      A.    No.

      Q.    Did Senator Pearce talk to you about Mr. Reza that night?

      A.    No.

      Q.    Did any of the other senators talk to you about Mr. Reza that night, to the best of your recollection?

      A.    No.

      Q.    So you can't remember any other problems that you had or incidents regarding Mr. Reza the night of the hearing?

      A.    No.

EOR II, p. 94 (trans. p. 69, lines 3-25). Accordingly, even Officer Burton admitted that Mr. Reza did <u>not</u> disrupt the Senate on February 22, 2011.

    Officer Burton also admitted that there were <u>not</u> any disruptions in the actual Senate hearing room on February 22, 2011, and he <u>never</u> witnessed anything that transpired in the "overflow" room (where Mr. Reza was sitting) that actually disrupted the Senate hearing room:

      Q.    And the hearing ended?

8

> A. The hearing ended.
>
> Q. Was anyone arrested?
>
> A. No.
>
> Q. Did any fights break out?
>
> A. No.
>
> Q. Any disturbances of the peace?
>
> A. No.
>
> EOR II, Tab 8, p. 95, (trans. p. 70, lines 1-8).
>
> Q. Were there any disruptions in the actual Senate hearing room?
>
> A. No.
>
> Q. Did you personally witness the hearing in the actual Senate room being disrupted by anything transpiring in the overflow room?
>
> A. No.

EOR II, Tab 8, p. 54, ¶ 73. Officer Burton's eye-witness testimony regarding Mr. Reza's behavior at the Senate hearing of February 22, 2011 is especially important because the only reason why Russell Pearce banned Mr. Reza from the Senate building is because Mr. Reza allegedly "disrupted" the Senate hearing of February 22, 2011. Id. at pp. 60-61, ¶¶ 110-111.[2]

---

[2] In fact, five other witnesses also testified that Mr. Reza did not do anything to disrupt the Senate on February 22, 2011. See EOR II, pp. 71-89.

9

Although Mr. Pearce vaguely claims in his <u>Petition</u> (at p. 3) that he "observed that the disruptions in the overflow room were making it difficult for the Senate to conduct its business," he does <u>not</u> claim that there were any actual disruptions in the Senate hearing room, and he does <u>not</u> claim that Mr. Reza caused any of the alleged "disruptions." Accordingly, there is <u>no</u> evidence in the record that Mr. Reza did anything to <u>actually</u> disrupt <u>any</u> proceeding at the Arizona State Senate in any way on February 22, 2011 or at any other time.

There is also no evidence that Russell Pearce did <u>anything</u> to investigate whether or not Mr. Reza actually disrupted the Senate on February 22, 2011 <u>before</u> he decided to ban Mr. Reza from the Senate. This failure is fatal to Pearce's qualified immunity defense.

As this Court observed in <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 918 (9th Cir. 2012) (<u>en</u> <u>banc</u>), a "claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." This Court explained the probable cause requirement in <u>United States v. Lopez</u>, 482 F.3d 1067, 1073 (9th Cir. 2007):

> Under the Fourth Amendment, a warrantless arrest requires probable cause. Probable cause to arrest exists when . . . when under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime. While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, mere suspicion,

10

> common rumor, or even strong reason to suspect are <u>not</u> enough.

(Emphasis added). Accordingly, even "strong suspicions" that Mr. Reza actually disrupted the Senate were <u>not</u> sufficient to justify Mr. Pearce's ban of Mr. Reza from the Senate building.

Moreover, as this Court noted in <u>Mendocino Environmental Center v. Mendocino County</u>, 192 F.3d 1283, 1293 (9th Cir. 1999), absent exigent circumstances <u>not</u> present in this case, a public official has a duty to investigate the facts <u>before</u> issuing an order that could result in an arrest:

> Although a police officer is entitled to rely on information obtained from fellow law enforcement officers, <u>United States v. Bernard</u>, 623 F.2d 551, 560-61 (9th Cir. 1980), this in no way negates a police officer's duty to reasonably inquire or investigate these reported facts. We have denied qualified immunity to police officers who had indisputably relied on information obtained from other law enforcement officials, when we concluded that they violated their duty to conduct further investigation. See <u>Guerra v. Sutton</u>, 783 F.2d 1371, 1375 (9th Cir. 1986) (federal agents' reliance on assurances by local police officers that appropriate warrants had been obtained, and resultant failure to inquire about the nature or scope of these warrants, was unreasonable); <u>United States v. Kyllo</u>, 37 F.3d 526, 529 (9th Cir. 1994) (inclusion in affidavit of account of arrest provided by another police officer and failure to conduct additional investigation may be reckless when account omitted material facts).

11

See also Lacey v. Maricopa County, 693 F.3d 896, 924 (9th Cir. 2012) (en banc) ("Officers have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if insufficient details are relayed").

Accordingly, even if Mr. Pearce was "mistaken" in banning Mr. Reza from the Senate building—and he clearly was—his mistake was not objectively reasonable because he failed to do anything to assure that Mr. Reza had actually disrupted the orderly operations of the Senate before issuing the ban.

This conclusion is underscored by the fact that Officer Burton admitted that Mr. Reza did not disrupt the Senate at any time before his arrest—and that "but for" Senator Pearce's order banning Mr. Reza from the Senate—Mr. Reza would not have been arrested:

> Q. Now, when Mr. Reza walked in [the Arizona State Senate on February 24, 2011], was he being disruptive?
>
> A. Not that I recall.
>
> Q. And correspondingly, when Mr. Reza walked in, he wasn't disturbing the peace either, was he?
>
> A. No.
>
> Q. And isn't it your understanding that citizens who aren't being disruptive can go visit the State Senate?
>
> A. Yes. But for the order that was given by the person who had control over the building, if not for that order, then, yes. (Emphasis added.)

12

> Q. If not for that order, Mr. Reza could have been lawfully in the building?
>
> A. Yes.
>
> Q. And identify, for the record, the person who had the lawful control of the building, in your opinion.
>
> A. To the best of my knowledge, Senator [Russell] Pearce.

EOR III, pp. 60-61, ¶ 110. See also EOR II, p. 94 (transcript p. 69, lines 3-25).

Lacking any evidence that Mr. Reza actually disrupted the Senate, Mr. Pearce attempts to justify banning Mr. Reza from the Senate building based upon events that Mr. Reza had nothing to do with, e.g., Jared Loughner's shooting of (former) Representative Gabrielle Giffords and the (now late) Honorable John Roll in Tucson, Arizona on January 8, 2011, the alleged "tense atmosphere" at the Senate that day, etc. See Petition, pp. 11-12.

However, because Mr. Reza had absolutely nothing to do with those events, under this Court's opinion in Norse v. City of Santa Cruz, 629 F.3d 966 (9th Cir. 2010)—absent any "actual disruption" caused by Mr. Reza—those events could not justify Mr. Pearce's order banning Mr. Reza from the Senate building. As Judge Kozinski observed in his concurring opinion in Norse, "in our system [of government], undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." Id. at p. 979 (emphasis added).

13

Accordingly, only evidence of an "actual disruption" could justify Mr. Pearce's ban on Mr. Reza. Russell Pearce's unfounded fear of him is not enough.

## CONCLUSION

Because the record is devoid of evidence that Mr. Reza actually disrupted the Senate, this Court's <u>Opinion</u> was correct in concluding that a factual dispute precluded summary judgment in favor of Russell Pearce.

Moreover, the Court's <u>Opinion</u> does <u>not</u> announce any new legal standards or conflict with this Court's previous opinions. To the contrary, the <u>Opinion</u> merely applies this Court's well established precedents in <u>White</u>, <u>Kindt</u>, <u>Norse</u>, and <u>Acosta</u>, which Mr. Pearce gives no reason for the Court to reverse.

Accordingly, Mr. Pearce's <u>Petition for Rehearing and Rehearing En Banc</u> should be <u>DENIED</u>.

Respectfully submitted this 21st day of October 2015.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

<u>s/ Stephen Montoya</u>
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Appellant

14

# CERTIFICATE OF COMPLIANCE
## TO FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the foregoing Response is proportionately spaced, has a typeface of 14 points and is under fifteen pages in length.

Respectfully submitted this 21st day of October 2015.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

s/ Stephen Montoya
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Appellant

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Response with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 21, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system to the following registrants:

Loren Ungar
Logan V. Elia
Evan D. Bolick
Rose Law Group, P.C.
7144 East Stetson Drive, Suite 300
Scottsdale, Arizona 85251
Attorneys for Appellee Russell Pearce

Sandra Slaton
Slaton Law Office, P.C.
6730 North Scottsdale Road, Suite 233
Scottsdale, Arizona 85253
Attorney for Appellee John Burton

Luane Rosen
Schneider & Onofry, P.C.
3101 North Central Avenue, Suite 600
Phoenix, Arizona 85012
Attorney for Appellee Jeff Trapp


s/ Stephen Montoya